UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-80011-CR-MARRA/McCABE

UNITED STATES OF AMERICA

vs.

JOSEPH LAGUERRE,
  a/k/a "Jody Waffles,"

   Defendant.
_____/

PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and JOSEPH LAGUERRE (hereinafter referred to as the "defendant"), enter into the following agreement:

1. The defendant agrees to plead guilty to Count Two of the Indictment, which charges him with possession of an unauthorized Postal Arrow Key with the intent to unlawfully use it, in violation of Title 18, United States Code, Sections 1704 and 2.

2. The United States agrees to seek dismissal of Counts One and Three of the Indictment after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered.

The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely because of the sentence imposed.

4. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of ten (10) years, followed by a term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000. The Court shall order restitution in an amount to be determined.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. Although not binding on the probation office nor the Court, in exchange for the undertakings made by the defendant in this plea agreement, the United States agrees to recommend that the sentence imposed in the instant case be served <u>concurrently</u> with any term of imprisonment that the defendant may receive in his state case currently pending in the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida: felon in possession of a firearm (case number 23CF000969). The defendant further understands that the state court is under no obligation to impose a state sentence that is concurrent with the federal sentence.

7. Although not binding on the probation office or the Court, the parties will jointly recommend that the Court make the following findings with regard to the defendant's relevant conduct:

(a) Pursuant to U.S.S.G. § 2B1.1, the base offense level is 6;

(b) Pursuant to U.S.S.B. § 2B1.1(b)(1)(c), the defendant's intended loss was more than $15,000 but less than $40,000, resulting in an additional 4 levels;

(c) Pursuant to U.S.S.B. § 2B1.1(b)(2)(a)(i), the instant offense involved stealing mail matter from mail cluster boxes. The offense involved 10 or more victims, resulting in an additional 2 levels;

(d) Other than the 2-level reduction for acceptance of responsibility, there are no additional guidelines enhancements nor reductions that apply to this case.

8. Although not binding on the probation office or the Court, the parties agree to jointly recommend a sentence within and at the low-end of the advisory guideline range, which the parties reasonably believe to be 10-16 months' imprisonment.

9. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations

contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

10. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

11. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office

4

makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

12. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 8/31/23       By: _____
                         RINKU TRIBUIANI
                         ASSISTANT UNITED STATES ATTORNEY

Date: 08/31/2023    By: _____
                         GREG ROSENFELD, Attorney for Joseph Laguerre
                         ~~ASSISTANT FEDERAL PUBLIC DEFENDER~~

Date: 8/31/23       By: _____
                         JOSEPH LAGUERRE
                         DEFENDANT

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80011-CR-MARRA

UNITED STATES OF AMERICA

vs.

JOSEPH LAGUERRE,

Defendant.
_____

## FACTUAL PROFFER

Had this case proceeded to trial, the United States would have proved beyond a reasonable doubt the following facts:

On or about September 23, 2022, USPIS received a Mail Theft complaint from T.S., owner of Cee Dee Air Conditioning Inc., stating he had video surveillance of two individuals using a postal key to open the company's postal cluster box to steal mail. The building housing Cee Dee Air Conditioning had multiple surveillance cameras, with one pointing towards the cluster of mailboxes which were approximately 15 yards away from the building.

On September 27, 2022, USPIS Special Agent Gonzalez visited Cee Dee Air Conditioning Inc. to view the video of the mail theft which occurred on September 22, 2022. S/A Gonzalez observed two individuals in a dark colored 4-door vehicle back in towards the cluster of mailboxes. The cluster of mailboxes were on the passenger side of the vehicle. He saw the driver exit the vehicle and access the cluster boxes utilizing the Postal Arrow key. He then saw the driver hand mail matter to the passenger. The driver reentered the vehicle and the vehicle left the area. It should be noted that Joseph LAGUERRE's physical appearance matched the mail theft suspect in this video and additional videos gathered from neighboring businesses.

On December 18, 2022, Kenneth Hollis was pulled over by PBSO patrol for having an expired license plate and a suspended driver's license. Hollis was placed under arrest. Officers found two backpacks filled with U.S. Mail in Hollis' vehicle. Officers also located a Postal Arrow Key on Hollis' person. While Hollis was at the scene of the traffic stop, an individual drove up to the officer and asked for the keys that Hollis possessed. The individual claimed that the keys were his (individual's) house keys and belonged to him. The officer later identified the individual as Joseph LAGUERRE after picking him out of a photo line-up. The officer denied LAGUERRE's attempts to retrieve the keys that were in Hollis' possession, to include the Postal Arrow key.

During a post-*Miranda*, recorded interview, Hollis admitted to stealing mail that night (December 18, 2022) from postal collection boxes and business cluster boxes by using a Postal Arrow Key provided to him by an individual he refused to name. Hollis stated the individual was with him on that night in another vehicle. Hollis stated the individual "walked funny" because he was the victim of a shooting several months prior. Hollis stated he was offered $500 by the individual to steal mail from business cluster boxes. The individual provided Hollis with the Postal Arrow Key and kept in contact with him via cellular phone. That night, Hollis was supposed to give the stolen mail, and return the Postal Arrow Key, to the individual.

Hollis agreed to show agents the exact business cluster boxes from where he stole mail matter. Two of the postal cluster boxes were in Royal Palm Beach and six of the business cluster boxes were in West Palm Beach, Palm Beach County.

The backpack inside the vehicle driven by Hollis was searched pursuant to a search warrant and was found to contain numerous pieces of mail matter. Bank records confirmed that Hollis deposited into his mother's bank account at least six (6) stolen checks and he received the proceeds from those stolen checks.

While in jail, Hollis made several recorded calls which were monitored. On December 19, 2022, at 6:30 pm, Hollis placed a call to his mother, Joanne Alexander. Ms. Alexander advised Hollis that "Jody" (a nickname for LAGUERRE) had directed her to add him (LAGUERRE) to the call via three-way connection and that 'Tank' had given her LAGUERRE's phone number. Ms. Alexander confirmed the number for LAGUERRE to be 561-909-XXXX, which was later verified through the LINX system as being connected to Joseph LAGUERRE. During the initial calls with LAGUERRE, Hollis maintained that he (Hollis) had only been arrested for driving on a suspended license in a vehicle with an expired tag. However, Hollis attempted to convey to LAGUERRE that he (Hollis) was asked several questions about the key that law enforcement seized from his person. During this call, Hollis stated that he (Hollis) needed an attorney as soon as possible and LAGUERRE said that he (LAGUERRE) was going to help with things. LAGUERRE also indicated that LAGUERRE was on scene during Hollis' arrest and that the police would not give LAGUERRE the keys when he (LAGUERRE) asked.

On December 23, 2022, Hollis called his mother, at which point she indicated that Hollis' state lawyer sent her paperwork concerning the federal charges, to include possession of a USPS key, and stealing mail, and that he admitted to doing so. Ms. Alexander indicated that she had spoken to LAGUERRE, who had directed Hollis to say nothing else and that he (Hollis) should not have admitted to having the key as it was not his (Hollis') and belonged to someone else. Ms. Alexander said that LAGUERRE advised that he (LAGUERRE) was going to help get Hollis a lawyer to help with the federal charges. Hollis quietly told his mother to not give LAGUERRE the arrest paperwork or let him see it. Ms. Alexander told Hollis that LAGUERRE told her to send him (LAGUERRE) the paperwork. She then revealed that LAGUERRE had been on a three-way call with the state lawyer and herself when the information regarding the federal charges was

3

revealed, and that LAGUERRE was aware of what was written in the reports based on that call. Ms. Alexander then called LAGUERRE on a three-way call. LAGUERRE told Hollis that he (Hollis) was supposed to say the car was a rental, and that the key didn't belong to him and had been found on the floor of the vehicle. LAGUERRE stated that he (LAGUERRE) knew that Hollis admitted that someone was paying him (Hollis) to do what Hollis did, and that Hollis should have had his attorney speak for him as he was scared and high. Hollis promised LAGUERRE, "'I won't say anything else."

Joseph LAGUERRE admits that all of the foregoing facts are true and correct, and that the foregoing facts satisfy each of the essential elements of the count to which he is pleading guilty.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 8/31/23   By: _____
RINKU TRIBUIANI
ASSISTANT UNITED STATES ATTORNEY

Date 08/31/2023   By: _____
GREG ROSENFELD
DEFENSE ATTORNEY

Date 8/31/23   By: _____
JOSEPH LAGUERRE
DEFENDANT

4